## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF FLORIDA

**Michael Ortiz,**

      **Plaintiff,**

          **v.**

**City of Hollywood; Hollywood Police Department; Hollywood Fire Rescue and Beach Safety Department; Henry Andrews; Jhonny Jimenez and Diante Roots**

      **Defendants.**

Civil Action

Jury Trial Demanded

## COMPLAINT

Now comes the Plaintiff, Michael Ortiz ,by and through his counsel, and alleges the following:

## NATURE OF ACTION

1.      This a Federal Civil Rights action is brought pursuant to 42 U.S.C. §§ 1983, 1985 & 1988 and Florida state tort laws.

## PARTIES

2.      Plaintiff Michael Ortiz (herein after "Michael") is a resident of the State of Florida.

3.      Defendant, City of Hollywood, is a political subdivision of the State of Florida. Among other things, the City of Hollywood provides law enforcement services and emergency medical services through the Hollywood Police Department and the Hollywood Fire Rescue and Beach Safety Department. At all times material hereto, Defendant, City of Hollywood, is a Florida

municipal corporation and is a person defined by 42 U.S.C. § 1983 and is subject to the jurisdiction of this Court. At all times material hereto, Hollywood operated the City of Hollywood Police Department and the Hollywood Fire Rescue and Beach Safety Department.

4.      Defendant, Hollywood Police Department, at all times relevant hereto, was acting under color of law.  Chief Chris O' Brien, is the Chief of Police and as his role as Chief, Defendant is responsible for formulating and implementing Hollywood's policies and procedures and ensuring that its officers are properly and adequately trained.

5.      Defendant, Hollywood Fire Rescue and Beach Safety Department, at all times relevant hereto, was acting under color of law. Plaintiff, Michael Ortiz, was in the emergency care of employees of the Hollywood Fire Rescue and Beach Safety Department after having suffered a mental health emergency at his home. The activity is an operational level of decision making within the Defendant. Since this activity does not fall into a category which involves broad policy making or planning, and does not involve discretionary governmental functions, the Defendant is not immune from tort liability. Hollywood Fire Rescue and Beach Safety Department employees were acting in the course and scope of employment with Defendant, City of Hollywood. Accordingly, Defendants, the Hollywood Fire Rescue and Beach Safety Department and the City of Hollywood, are vicariously liable for the negligence of its employees.

6.      Defendant Officer Henry Andrews ("Officer Andrews"), upon information and belief, is a resident of Broward County, Florida. At all times material hereto, Officer Andrews was an employee and a law enforcement officer of Hollywood and is being sued in his individual capacity. At all times material hereto, Officer Andrews was acting as an agent and employee of the City of Hollywood and was acting under the color of state law.

7.     Defendant Officer Diante Roots ("Officer Roots"), upon information and belief, is a resident of Broward County, Florida. At all times material hereto, Officer Roots was an employee and a law enforcement officer of Hollywood and is being sued in his individual capacity. At all times material hereto, Officer Roots was acting as an agent and employee of the City of Hollywood and was acting under the color of state law.

8.     Defendant Jhonny Jimenez ("Officer Jimenez"), upon information and belief, is a resident of Broward County, Florida. At all times material hereto, Officer Jimenez was an employee and a law enforcement officer of Hollywood and is being sued in his individual capacity. At all times material hereto, Officer Jimenez was acting as an agent and employee of the City of Hollywood and was acting under the color of state law.

9.     At all times material hereto, the Defendant, City of Hollywood, was and is a political subdivision or agency of the municipality of Hollywood, Florida engaging in activity more particularly described below. The activity is an operational level of decision making within the Defendant. Since this activity does not fall into a category which involves broad policy making or planning, and does not involve discretionary governmental functions, the Defendant is not immune from tort liability. Thus, in accordance with Article X, Section 13 of the Florida Constitution, the Defendant waives sovereign immunity from liability for tort.

10.    Plaintiff, Michael Ortiz, has complied with the notice requirements of Florida Statutes § 768.28. As such, Plaintiff has fulfilled the conditions precedent to maintaining this lawsuit against the aforesaid municipality.

### JURISDICTION AND VENUE

11.    This action is brought pursuant to 42 U.S.C. §§ 1983, 1985 & 1988 and the laws of the State of Florida.

12.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1367. The Court has pendent jurisdiction over claims under Florida law, as such state law claims derive from a common nucleus of operative facts as the claims arising under federal law so as to form part of the same case or controversy.

13.     Venue is proper in this Court pursuant to 28 U.S.C § 1391(b) as all parties are located within the Southern District of Florida, and the cause of action arose in the Southern District of Florida.

14.     All conditions precedent to this action have been complied with or have been waived. Pursuant to Florida Statute § 768.28, statutory notices of claim were properly served upon the City of Hollywood, the Hollywood Police Department, the Hollywood Fire Rescue and Beach Safety Department as well as the Department of Insurance.

**FACTUAL ALLEGATIONS**

15.     On  July 3, 2021, Michael was at his mother's home, in Hollywood, Florida.

16.     At that time and place, Michael called 9-1-1 requesting paramedics and emergency medical services because he believed his safety and well-being were at risk while suffering a mental health emergency and chest pains.

17.     While waiting for the paramedics to arrive, Michael tried to calm his mental episode by taking a shower.

18.     When the Hollywood Fire and Rescue paramedics arrived, Michael did not hear them knocking and did not answer the door because he was still in the shower.

19.     Shortly after, Michael answered the door while he was still naked from the shower and the Hollywood Fire and Rescue personnel encountered Michael to render medical aid

20.     Michael, who was still mentally unstable due to his medical episode, acted with erratic behavior and spoked spoke incoherent and confusing words in Spanish.

21.     Hollywood Fire and Rescue personnel then gained control of Michael by placing him on the ground.

22.     Shortly after, Officer Andrews, Officer Roots and Officer Jimenez (collectively "Defendant Officers"), arrived at the scene while Michael was on the ground, unarmed and still naked from the shower. At this point, at least six City of Hollywood employees, including Officers and Fire and Rescue Paramedics, were present at the scene.

23.     Defendant Officers then took charge of the scene and physically gained control of Michael.

24.     Defendant Officers struggled to seize Michael, since he was mentally unstable, screaming incoherently and flailing his arms and legs helplessly. Nevertheless, the Officers were eventually able to gain full control of him.

25.     When Defendant Officers took control of the scene, Michael was not a physical threat to the safety of any officers or himself.

26.     Instead of rendering aid to Michael during his mental health emergency, Defendant Roots threatened to deploy his taser while Michael was struggling with a mental health episode.

27.     Other Defendant Officers present at the scene did not intervene to prevent the use of force on Michael during the offset of his medical condition, even though it was clear that Michael was mentally and physically disabled due to his mental health emergency.

28.     In furtherance of the force being executed against Michael, Officer Roots deployed his taser on Michael who was naked and unarmed. At this point, Michael was placed in handcuffs and remained face down on the ground.

29.     Michael was injured and caused to suffer intense pain as a result of being shot with the taser weapon.

30.     Immediately thereafter, while Michael was under the effects of the taser shot, Defendant Officers and the Fire and Rescue paramedics dragged Michael on the floor to the elevator.

31.     While Defendant Officers were dragging him into the elevator, Michael began regaining conscience from the first shock. Michael, who was still suffering with a mental health crisis became alarmed as he was still naked, in handcuffs, and on the ground.

32.     Officer Roots attempted to tase Michael again while the prongs from the first taser shot were still on Michael's body.

33.     At this point, Officer Andrews reached into his waist, grabbed his police department issued firearm, placed the gun on Michael's back and shot him.

34.     All other officers present during the incident were in a position to see Officer Andrews draw his firearm and aim at Michael and did in fact see Officer Andrews draw his firearm and aim it at Michael in an obvious attempt to shoot him. Defendant Officers took no action to protect Michael from the actions of Officer Andrews.

35.     Thereafter, Hollywood Fire Rescue personnel, without taking Michael's vitals or rendering any aid, directed Defendant Officers to put Michael into the elevator.

36.     Officer Jimenez attempted to aid Michael and checked his vitals.

37.     Michael was then dragged into the elevator, taken to the first floor and dragged out of the elevator.

38.     When Plaintiff was shot, he was in handcuffs and did not pose a threat of serious physical harm or risk of flight. Further, because Michael was naked, no officer could have reasonably believed that Plaintiff had any concealed weapons on his person.

39.     As a direct and proximate cause of the intentional, reckless, grossly negligent and/or negligent conduct by Defendant Officers, Michael is now paralyzed from the waist down and forever bound to a wheelchair as he will never be able to walk again.

### CAUSES OF ACTION[1]

#### Count I
#### Excessive Force – 42 U.S.C. § 1983
#### *(Against Defendant Officers Andrews, Roots and Jimenez )*

40.     Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Count.

41.     The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

42.     This guarantee includes the plain right to be free from the use of excessive force in the course of an arrest, investigatory stop, or any other seizure.

43.     At all times relevant, Plaintiff had a clearly established right to liberty, including the right to personal safety and bodily integrity, as well as protection from unlawful seizure, unnecessary force, unreasonable force pursuant to the Fourth Amendment to the United States Constitution.

44.     At all times relevant, as police officers acting under the color of law, Defendant Officers were required to obey the laws of the United States.

---

[1] Once Defendants release the video of the incident,  Plaintiff will amend the allegations to further specify the involvement and names of each officer and individuals who were present at the scene.

45.     Claims that a police officer used excessive force are analyzed under an objective reasonableness standard. The operative question in excessive force cases is whether the totality of the circumstances justifies a particular sort of search or seizure.

46.     At the time Plaintiff was tased and shot, Plaintiff was committing no crime whatsoever.

47.     Defendant Officers, during the course of their encounter with Plaintiff, used more force than necessary to subdue Plaintiff and utilized dangerous tactics and exercised poor discretion when deciding to engage Plaintiff in a physical confrontation.

48.     Defendant Roots used excessive force against Plaintiff, by tasing Plaintiff at least twice while Plaintiff was naked, unarmed, posed no risk to any person, and was suffering a mental health episode and emergency.

49.      Defendant Andrews used the excessive force against Plaintiff, by shooting him in his back, while Plaintiff was naked, unarmed, posed no risk to any person, and was suffering a mental health episode and emergency. At this point, Plaintiff was also fully restrained by Defendant Officers and had already been tased at the time of this egregious and excessive use of force.

50.     At the time Defendant Officers used the significant force against Plaintiff, by tasing him and ultimately shooting him, Defendant Officers knew that they had no reason to believe that Plaintiff was armed or dangerous, given that Plaintiff was fully naked.

51.     Moreover, at the time Plaintiff was tased and shot, Defendant Officers clearly outnumbered Plaintiff, a vulnerable individual who was merely seeking medical aid.

52.      Despite the fact that Plaintiff was restrained in handcuffs, posed no threat whatsoever to anyone and had already been tased, Officer Andrews pulled out his gun and shot Plaintiff in back.

53.      At the time Defendant Officers used this egregious and excessive force against Plaintiff, Defendant Officers knew that Michael was at most, only passively suffering a mental health medical emergency.  Thus, Defendant Officers gratuitously and indiscriminately used excessive force toward Plaintiff.

54.      Further, because Plaintiff was naked, no officer could have reasonably believed that Plaintiff had any concealed weapons on his person.

55.      The use of force against Plaintiff, including the taser shot and the gun shot, was unwarranted and wholly unjustified. Plaintiff was not engaged in any criminal act or illegal conduct that would necessitate, warrant, or justify the use of the level of force exercised by Officer Andrews, Officer Roots and Officer Jimenez..

56.      Defendant Officers, acting individually and in concert with each other, violated Plaintiff's rights protected under 42 U.S.C. §1983.

57.      Even if Defendant Andrews intended to utilize a taser and instead discharged his firearm, the use of force was egregious, excessive, and unlawful because at the time Plaintiff was shot, he was already restrained in handcuffs, recovering from the impact of the first taser, naked and thus not concealing any weapons on his person, and posing no real threat to Officers or by standers and suffering a mental health emergency.

58.      As such, the force used against Plaintiff was not objectively reasonable.

59.      As a direct and proximate result of the aforementioned, Defendants violated the rights of Plaintiff.

60.     As a direct and proximate result of the Defendants' conduct, Plaintiff suffered emotional and physical pain, emotional and physical injury, and is now paralyzed waist down and forever bound to a wheelchair as he will never be able to walk again.

61.     As a direct and proximate result of Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs.

### Count II
### Failure to Intervene – 42 U.S.C. § 1983
### (*Defendant Officers Roots, Jimenez and Andrews - individually*)

62.      Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs of this Complaint as though fully alleged in this Count.

63.     Defendant Officers failed to take any action to intervene to prevent the misconduct committed by Officer Roots when he first tased Plaintiff.

64.     Thereafter, Officer Roots attempted to tase Plaintiff again at least two more times.

65.      Officer Andrews and Officer Jimenez failed to take any action to intervene to prevent the misconduct committed by Officer Roots when tasing Plaintiff at least twice.

66.     Officer Roots and Officer Jimenez failed to take any action to intervene to prevent the misconduct committed by Officer Andrews who shot Plaintiff.

67.     The Individual Defendants each had a duty to intervene to prevent the other from engaging in unlawful conduct.

68.      The Individual Defendants each had a duty to intervene to prevent the other from unlawfully causing Plaintiff to suffer injury.

69.      The Individual Defendants each had a meaningful and appreciable opportunity to intervene to prevent the aforementioned conduct but failed or refused to do so.

70.     As a direct and proximate result of the aforementioned, Defendants violated the rights of Plaintiff.

71.      As a direct and proximate result of the Defendants' conduct, Plaintiff suffered emotional and physical pain, emotional and physical injury, and is now paralyzed waist down.

72.      As a direct and proximate result of the Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs. .

### Count III
### Monell Liability– Failure to train – §1983
### (*Against Defendants City of Hollywood and Hollywood Police Department*)

73.     Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1-39 of this Complaint as though fully alleged in this Count.

74.     Defendants City of Hollywood and Hollywood Police Department ("City of Hollywood Defendants") failed to adequately train officers regarding use of the taser, including using it on someone suspected of having a medical episode and/or someone who is refusing medical care.

75.     The City of Hollywood Defendants failed to train officers to deal with individuals experiencing a mental health crisis and failed to train officers in de-escalation techniques and those failures amount to deliberate indifference.

76.     The City of Hollywood Defendants have failed to properly train officers to identify persons who may be afflicted by a mental health crisis, and to properly take actions to deescalate potentially volatile encounters with persons in the public. Defendants had a custom, policy or practice of failing to properly train its officers to effectively deal with persons who may be experiencing a mental health crisis.

77.     The City of Hollywood Defendants provide no training in how to handle mentally unstable citizens, or any special restraining techniques for holding such people without injury and no training regarding when force may be used in a medical aid call, whether it is appropriate to use a taser on someone who may be having medical problems, and how to deal with an individual who is refusing medical treatment.

78.     The City of Hollywood Defendants, by and through their agents, employees, and officers have failed to properly train personnel in techniques that minimize the likelihood of dangerous and tragic encounters with members of the public.

79.     The City of Hollywood Defendants dispatches its police officers in support of medical aid calls. In a medical aid call situation, it is foreseeable that police officers will deal with individuals who are upset, who do not want to receive medical treatment, and who do not want personnel to be present.

80.     The City of Hollywood Defendants failed to properly train officers on proper techniques to restrain mentally unstable individuals and mental patients in emergency situations.

81.     The City of Hollywood Defendants failed to adequately train, supervise, and control employees regarding procedures and practices for medical emergencies, including without limitation, procedures and practices involving individuals who have reported a medical emergency, including without limitation seizures, and who have refused medical treatment; and condoning and encouraging officers in the belief that they can violate the rights of persons such as Plaintiff in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

82.     The City of Hollywood Defendants failed to properly train officers to use tasers under the circumstances described above.

12

83.     The City of Hollywood Defendants failed to train police officers in the use of deadly firearm force under the circumstance described above.

84.     Handling citizens in an altered mental state is something that should be expected and foreseen by the City of Hollywood Defendants and therefore, training should have been provided on these subjects.

85.     Police officers of the City of Hollywood have employed excessive force in restraining mentally unstable citizens in a similar manner as in this case.

86.     Lack of training in this specific area of restraining a mentally disturbed individual was so likely to cause a constitutional violation that the need for the special training was obvious.

87.     Given that City officers respond to medical aid calls and considering that a different dynamic is likely to be involved in medical aid calls than in criminal investigation calls, a reasonable jury could find the absence of such training reflects deliberate indifference.

88.     Proper training would have led the officers to avoid physical contact Plaintiff and request a health professional attend to the situation.

89.     Plaintiff is informed and believes that the City of Hollywood Defendants and their decision makers ordered, authorized, acquiesced in, tolerated, permitted or maintained custom and usages permitting the other Defendants herein to engage in the unlawful and unconstitutional actions, policies, practices, and customs or usages set forth in the foregoing paragraph. Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or Defendants deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of Plaintiff.

90.     As a direct and proximate result of the aforementioned, Defendants violated the rights of Plaintiff.

91.     As a direct and proximate result of the City of Hollywood Defendants' conduct, Plaintiff suffered emotional and physical pain, emotional and physical injury, and is now paralyzed waist down.

92.     As a direct and proximate result of the City of Hollywood Defendants' conduct and the prosecution of this civil litigation, Plaintiff has incurred and will incur attorneys' fees and litigation costs.

**Count IV**
**Monell Liability-Policy, Custom or Usage – §1983**
**(*Against City of Hollywood and Hollywood Police Department*)**

93.     Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1-39 of this Complaint as though fully alleged in this Count.

94.     Defendants, City of Hollywood, Hollywood Police Department and their decision maker have a policy or practice of using excessive force on persons and arrestees and have a policy or practice in failing to properly train officers how to use tasers, and in the use of said tasers to avoid excessive force.

95.     As a direct and proximate result of the policy decisions of Chief Chris O'Brien, concerning the City of Hollywood, and Hollywood Police Department, use of force policy, Michael, suffered severe continuous pain and psychological damages.

96.     Plaintiff is informed and believes that at all times during and prior to the above-mentioned incident, Defendants City of Hollywood and Hollywood Police Department, and/or each of them, were aware of, tolerated, approved, ratified, condoned, encouraged, and/or tacitly authorized a pattern and practice of unjustified and unreasonable use of excessive force by police officers of the City of Hollywood.

97.     Plaintiff is informed and believes that in addition to permitting a pattern and practice of the use of excessive and unreasonable force by police officers, the City of Hollywood Defendants failed to maintain a proper system for investigating and monitoring those officers who have been charged with the use of excessive and unreasonable force.

98.     Plaintiff is informed and believes that the City of Hollywood Defendants have failed to maintain a system of supervision or review for identifying the use of excessive and unreasonable force by officers and have failed to subject officers who engage in such conduct to discipline, closer supervision or retraining to the extent that it has become the "de facto" policy and custom of the City of Hollywood Defendants to tolerate the use of excessive and unreasonable force by officers.

99.     Plaintiff is further informed and believes that the City of Hollywood Defendants have failed to properly train, supervise, and instruct officers in the City of Hollywood Police Department regarding the proper use of electrical stun weapons, such as the taser weapon and firearms that were used against Plaintiff.

100.     The customs, policies, or practices herein constitute deliberate indifference to Plaintiff's Fourth and Fourteenth Amendment rights under the United States Constitution, including the right to liberty, the right to substantive and procedural due process, the right to be free from unlawful detention, the right to be free from unlawful seizure, and the right to be free from excessive use of force in the course of arrest.

101.     Defendants' conduct as alleged herein constitutes a pattern of constitutional violations based either on a deliberate plan by Defendants or Defendants' deliberate indifference, gross negligence, or reckless disregard to the safety, security, and rights of Plaintiff.

102.     As a direct and proximate result of the aforementioned, Defendants violated the rights of Plaintiff.

103.     As a direct and proximate result of the City of Hollywood and Hollywood Police Department's conduct, omissions, systematic flaws, policies and customs, Plaintiff suffered emotional and physical pain, emotional and physical injury, and is now paralyzed waist down.

104.     As a direct and proximate result of the City of Hollywood Defendants' conduct, omissions, systematic flaws, policies and customs, Plaintiff has incurred and will incur attorneys' fees and litigation cost.

### Count V
### Negligence –Fla. Stat. § 768.28;
### ( *Against Defendants, the City of Hollywood, the Hollywood Police Department and Officer Defendants* )

105.     Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1-39 of this Complaint as though fully alleged in this Count.

106.     The City knew that it had a duty of care to persons in its custody or to person exposed to dangers created by it.

107.     Each Defendant Officer owed Plaintiff a duty to exercise reasonable care in safeguarding Plaintiff while he was in their care, custody, or control.

108.     Plaintiff was in the care, custody, or control of the Defendant Officers, triggering a duty of care owed to Plaintiff.

109.     The Defendant Officers created and then subjected Plaintiff to a dangerous condition, also triggering a duty of care owed to Plaintiff.

110.     Each Defendant Officers, however, negligently breached the duty of care owed to Plaintiff.

111.     When the Defendant Officers began the operational phase to implement their discretionary decision to restrain a citizen who was suffering a mental health emergency and not committing any crime, Defendant Officers had the duty to exercise reasonable care in rendering aid to Michael.

112.     Instead, Defendant Officers placed Michael in a worst position and tased Michael multiple times thereby aggravating his mental health episode and symptoms, and ultimately shot Michael as a result.

113.     While the Defendant Officers determined that it was appropriate and necessary to help and rescue Michael so that he could receive further medical aid, the City's operational failure undermined their ability to do so.

114.     Defendants affirmatively responded to the mental health emergency call and assumed control of Michael's emergency, triggering a duty to act with reasonable care and not injure Michael.

115.     The City of Hollywood bears legal responsibility for the negligent conduct, acts, and omissions of their agents and employees.

116.     As the direct and proximate result of the negligence of the City of Hollywood's 's employees, Plaintiff, Michael Ortiz, suffered grievous bodily injury, permanent injury, pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of medical treatment, hospitalization, loss of earnings in the past, loss of future earning capacity, and aggravation of previously existing conditions. These losses, injuries and damages are permanent in nature and losses will continue into the future.

117.     Wherefore, Plaintiff, Michael Ortiz, demands judgment against Defendants, City of Hollywood, the Hollywood Police Department and Defendant Officers, for damages, court costs, interest, and such other and further relief as the Court deems just and proper.

**Count VI**
**Negligence –Fla. Stat. § 768.28;**
**(** *Against Defendants, the City of Hollywood and the  Hollywood Fire Rescue & Beach Safety Department* **)**

118.     Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1-39 of this Complaint as though fully alleged in this Count.

119.     Plaintiff was also in the emergency care of employees of the Hollywood Fire Rescue and Beach Safety Department, who initially arrived at the scene to assist Michael Ortiz during a mental health emergency. Hollywood Fire Rescue paramedics, acting in the course and scope of their employment with the City of Hollywood, failed to use due care while rendering medical aid by failing to properly assess and perform medical procedures that were critical to the life-threatening condition and failing to act with reasonable care while moving and transporting Michael Ortiz to the ambulance and hospital after being shot.

120.     The City knew that it had a duty of care to persons in its custody or to person exposed to dangers created by it.

121.     Each paramedic/EMS from the Hollywood Fire Rescue and Beach Safety Department who were present at the scene, owed Plaintiff a duty to exercise reasonable care in safeguarding Plaintiff while he was in their care, custody, or control,.

122.     Plaintiff was also in the care, custody, or control of the Hollywood Fire Rescue and Beach Safety Department paramedics/EMS, triggering a duty of care owed to Plaintiff.

123.     When the Individual Fire and Rescue Defendants began the operational phase to implement their discretionary decision to render medical aid to Plaintiff, who was suffering a mental health emergency and not committing any crime, they had the duty to exercise reasonable in rendering aid to Plaintiff.

124.     Further, when Plaintiff was tased and shot, the Hollywood Fire and Rescue Defendants had the duty to exercise reasonable in rendering aid to Plaintiff.

125.     The Hollywood Fire and Rescue Defendants, however, negligently breached the duty of care owed to Plaintiff.

126.     At that time and place, said employees of the Hollywood Fire Rescue and Beach Safety Department, negligently failed to use due care while failing to assess Michael's medical condition and injuries and allowing Michael to be dragged while he suffering a medical emergency and after being tased and shot on the back.

127.     While the Hollywood Fire and Rescue employees determined that it was appropriate and necessary to help and rescue Michael so that he could receive further medical aid, the City's operational failure undermined their ability to do so.

128.     The City of Hollywood bears legal responsibility for the negligent conduct, acts, and omissions of their agents and employees.

129.     As the direct and proximate result of the negligence of the City of Hollywood  and the Hollywood Fire Rescue and Beach Safety Department Defendant's employees, Plaintiff, Michael Ortiz, suffered grievous bodily injury, permanent injury, pain and suffering, impairment, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of medical treatment, hospitalization, loss of earnings in the past, loss of future earning capacity, and

aggravation of previously existing conditions. These losses, injuries and damages are permanent in nature and losses will continue into the future.

130.     Wherefore, Plaintiff, Michael Ortiz, demands judgment against Defendant, City of Hollywood, for damages, court costs, interest, and such other and further relief as the Court deems just and proper.

**Count VII– Battery/Assault**
*(Against Defendants the City of Hollywood and Hollywood Police Department and Defendants Andrews and Roots individually)*

131.     Plaintiff realleges and incorporates herein by reference each of the allegations contained in the preceding paragraphs 1-39 of this Complaint as though fully alleged in this Count.

132.     The use of force by Defendant Officers towards Plaintiff was objectively unreasonable and unnecessary for Defendant Officers to defend themselves or any other person from bodily harm during their encounter with Plaintiff, and resulted, as Defendant Officers reasonably should have foreseen, in a harmful and offensive contact of Plaintiff, against his will.

133.     At all times material hereto, the Defendant City of Hollywood, their agents, servants and/or employees including but not limited to Defendant Officers intended to cause bodily harm/offensive contact to Plaintiff, who suffered a harmful/offensive contact.

134.     The battery/unnecessary use of force by Defendant Officers toward Plaintiff occurred during the course and scope of their employment as police officers for the City of Hollywood.

135.     As an actual and proximate result of the wrongful acts of Defendant Officers, conducted without due care in the execution and enforcement of the law, Plaintiff was placed in great fear for his life and physical well-being.

136.     As an actual and proximate result of the wrongful acts of Defendants Officer, conducted without due care in the execution and enforcement of the law, Plaintiff has suffered extreme and severe physical pain and suffering and has been injured in his body in an amount according to proof.

137.     As an actual and proximate result of the wrongful and reckless acts of Defendants Officer, conducted without due care in the execution and enforcement of the law, Plaintiff has suffered extreme and severe mental anguish and has been injured in his mind in an amount according to proof.

138.     As a further direct and proximate result of the conduct of Defendants, Plaintiff suffered bodily injury and resulting pain and suffering, disability, disfigurement, mental anguish, loss of capacity for the enjoyment of life, expense of medical care and hospitalization, medical care and treatment, and loss of earnings in the past, loss of future earning capacity and aggravation of previously existing conditions. The losses, injuries and damages are permanent or continuing and Plaintiff will suffer the losses in the future.

139.     Wherefore, Plaintiff, Michael Ortiz, demands judgment against Individual Defendant Officers d, for damages, court costs, interest, and such other and further relief as the Court deems just and proper.

**WHEREFORE**, Plaintiff respectfully requests that judgment be entered in her favor as follows:

A.      Declaratory Judgment: That this Court declare that the Defendants' actions

B.      Compensatory Damages: all damages available by state and federal law, including but not limited to violation of rights, conscious physical pain and suffering, embarrassment,

humiliation, fear, death, loss of enjoyment of life, hedonic damages, and the loss of companionship from family;

     C.       Punitive Damages: as permitted by state and federal law;

     D.       Reasonable attorney's fees and costs: as permitted by state and federal law;

     E.       Pre and Post Judgment Interest: as permitted by state and federal law;

     F.       Such other financial or equitable relief as is reasonable and just.

     G.       Jury Trial Demand

     H.       Plaintiff respectfully requests a trial by jury on all claims/issues in this matter that may be tried to a jury.

Dated: February 28, 2023

Respectfully submitted,

                By:     /s/ *Rebeca Martínez Sicari*
                      Rebeca Martínez Sicari
                      Florida Bar No. 1026814
                      Hunter Shkolnik (to submit *pro hac vice*)
                      NS PR LAW SERVICES, LLC
                      1302 Avenida Ponce de Leon
                      Santurce, PR 00907
                      T: (787) 493-5088
                      rmartinez@nsprlaw.com
                      hunter@nsprlaw.com

                      Benjamin L. Crump
                      Florida Bar No. 5960364
                      BEN CRUMP LAW, PLLC
                      122 S Calhoun St,
                      Tallahassee, FL 32301
                      Ben@bencrump.com

Sue-Ann Robinson
Florida Bar Number. 29463
FRONTLINE LAW
614 S Federal Highway
Ft. Lauderdale, FL 33301
sueann@frontlinefirm.com


*Attorneys for Plaintiff*